UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHNATHAN PINNEY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 25-CV-10473-AK |
| CHRISTOPHER MYERS, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

On February 24, 2025, Plaintiff Johnathan Pinney, proceeding *pro se*, filed a complaint against a public defender, two state court judges, a psychiatrist, and unnamed defendants identified as "Up to 20 John Doe Defendants of Bridgewater State Hospital," "John Doe Public Defenders," and "John Doe Judges of Brockton District Court." [Dkt. 1]. Plaintiff filed three Motions: (1) a Motion for Appointment of Counsel [Dkt. 5]; (2) a Motion Requesting Funds to Subpoena Records [Dkt. 6]; and (3) a Motion for Leave to Proceed *In Forma Pauperis* [Dkt. 10] (collectively, the "Motions"). He also filed several notices, including a Notice of Change of Address. [Dkt. 11]. For the reasons below, the Court **ALLOWS** the Motion for Leave to Proceed *In Forma Pauperis*, **DENIES** the remaining Motions and **DISMISSES** this action pursuant to 28 U.S.C. § 1915(e)(2) and under the Court's inherent authority.

**I. Background**

Plaintiff, now a patient at Tewksbury Hospital, initiated this action while civilly committed to the Bridgewater State Hospital. The six-page, handwritten complaint is divided

1

into four counts as follows: (1) conspiracy to deny equal protection; (2) unconstitutional commitment process; (3) medical malpractice; and (4) punishment without trial. Plaintiff contends that the Defendants conspired to conduct proceedings to deny him equal protection of the law. He alleges that he was diagnosed with a psychiatric disorder without the benefit of a full medical evaluation, including certain neurological tests such as an MRI and CT scans. He states that the civil commitment process in the Commonwealth is unconstitutionally vague and complains that he has been held in excess of the crimes charged. For relief, Plaintiff seeks: (1) the removal of defendants from their roles as public officials; (2) monetary damages; and (3) declaratory relief concerning diagnosis without neurological testing.

A review of court records indicates that Plaintiff has previously filed at least 3 *pro se* complaints in this District, several concerning his treatment at Bridgewater State Hospital. See Pinney v. Bridgewater State Hospital, et al., No. 23-cv11006-FDS (D. Mass. Dec. 01, 2023) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)), aff'd, No. 23-2077 (1st Cir. Apr. 29, 2024).

## II.    The Motion to Proceed *In Forma Pauperis*

Pinney filed a Motion for Leave to Proceed *In Forma Pauperis*. [Dkt. 10]. A party bringing a civil action must either: (1) pay the $350.00 filing fee and the $55.00 administrative fee, see 28 U.S.C. § 1914(a); or (2) seek leave to proceed without prepayment of the filing fee, see 28 U.S.C. § 1915 (proceedings *in forma pauperis*). Unlike other civil litigants, prisoner plaintiffs[1] are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status. In addition, indigent prisoners who have had three or more actions

---

[1] Section 1915(h) defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

dismissed as "frivolous, malicious, or [for] fail[ure] to state a claim" may not "bring a civil action or appeal a judgment" *in forma pauperis* unless they are "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Here, Pinney states that he is "civilly committed" and that he qualifies "for SSI." [See Dkt. 1 at 6]. In the past, as a prisoner as defined by § 1915(h), he was assessed payments towards the filing fee. See Pinney v Illinois, No. 20-1932 (7th Cir. Sept. 9, 2020) (collecting cases).[2] However, Pinney is correct that now, as a person confined only by reason of an order of civil commitment, he is not deemed a prisoner as defined by 28 U.S.C. § 1915(h). Thus, Plaintiff's motion is **ALLOWED**.

### III. Screening of the Complaint

The Complaint is subject to screening pursuant to 28 U.S.C. §1915(e)(2) because Pinney is proceeding *in forma pauperis*. Under that statute, the Court must dismiss an action if, among other things, it fails to state a claim upon which relief can be granted or seeks monetary damages from a party that is immune. In addition, federal courts possess inherent authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962)). This includes the power to dismiss actions that are frivolous or malicious. See Mallard v. United States Dist. Ct., 490 U.S. 296, 307-08 (1989); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11 n.5 (1st Cir. 1985). A claim is legally

---

[2] In the September 9, 2020 Order, the Seventh Circuit identified the following dismissals as qualifying strikes under § 1915(g): Pinney v Organizations and Agents of the State, No. 11-4480 (N.D. Ill., Aug. 2, 2011); Pinney v Bureaucracy, No. 11-4481 (N.D. Ill., Aug. 5, 2011); and Pinney v United States Supreme Court, No. 19-3842 (D.D.C., Feb. 25, 2020).

3

frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court may also dismiss an action *sua sponte* for failing to state a claim. See Carlsen v. Carlsen, No. 11-CV-11119, 2011 WL 2632260 (D. Mass. July 1, 2011).

**IV.   Discussion**

At the pleading stage, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. Estelle v Gamble, 429 U.S. 97 (1976). *Pro se* complaints are construed liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Even under this generous standard, dismissal is warranted because the complaint lacks any plausible basis in law. See Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (stating that a complaint must allege a plausible entitlement to relief).

**1. Rooker-Feldman and Younger Abstention Doctrines**

To the extent Plaintiff challenges his civil commitment order, such action is barred by two related jurisdictional doctrines: Rooker-Feldman and Younger abstention. Under the Rooker-Feldman doctrine, federal district courts lack authority to review or overturn final state-

court judgments.³  See Geiger v. Foley Hoag LLP Retirement Plan, 521 F.3d 60, 65 (1st Cir. 2008).  The Younger abstention doctrine arises from Younger v. Harris, 401 U.S. 37 (1971) and bars the exercise of federal jurisdiction if it "would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007).  Here, Plaintiff seeks relief based on the civil commitment proceedings, but such action would be precluded under one or both doctrines.  If state court proceedings are ongoing, this Court lacks subject matter jurisdiction under the Younger abstention doctrine.  If a final judgment has been entered in state court, this federal court lacks subject matter jurisdiction over such claims under the Rooker-Feldman doctrine.

### 2. Constitutionality of Mass. Gen. L. c. 123

Even setting aside the Rooker-Feldman and Younger abstention doctrines, the complaint fails to "show[] that the pleader is entitled to relief" with regard to Pinney's claim challenging the constitutionality of civil commitment under Mass. Gen. L. c. 123.  A state's statutory scheme for the commitment of persons who are dangerous by reason of mental illness must give appropriate weight to the interest of the state and the rights of the individual.  On the one hand, a "state has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." Addington v. Texas, 441 U.S. 418, 426 (1979); see Kansas v. Hendricks, 521 U.S. 346, 363 (1997) (stating that "tak[ing] measures to restrict the freedom of the dangerously

---

³ The doctrine is named after the Supreme Court decisions in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

mentally ill" is a "legitimate nonpunitive governmental objective" of a state); Jackson v. Indiana, 406 U.S. 715, 736 (1972) (stating that "[t]he States have traditionally exercised broad power to commit persons found to be mentally ill"). On the other hand, a person has a liberty interest in avoiding civil commitment and the state cannot deprive them of this interest without providing due process. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (stating that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection") (internal quotation marks omitted) (quoting Jones v. United States, 463 U.S. 354, 361 (1983))).

The Supreme Court has never held that civil commitment beyond a certain number of days, months, or years is *per se* unconstitutional. Instead, due process "require[s] that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson, 406 U.S. at 738. Because the purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness," a civilly committed person is entitled to release when he is no longer mentally ill or is no longer dangerous. Jones, 463 U.S. at 368; see also Jackson, 406 U.S. at 731, 738 (holding that "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process," and that, although declining "to attempt to prescribe arbitrary time limits," the accused cannot be detained solely on the basis of incapacitation any longer than "the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future"); Geness v. Cox, 902 F.3d 344, 364 (3d Cir. 2018) (holding that seven years "exceeded the 'reasonable period of time necessary' under Jackson to ascertain whether there was a substantial probability the [former pretrial detainee] would attain competency in the foreseeable future"); cf. United States v. Filippi, 211 F.3d 649, 652 (1st Cir.

6

2000) (referring to Jackson, and holding that federal statute requiring commitment of all persons found incompetent to stand trial "for such a reasonable time, not to exceed four months" to determine the possibility of rehabilitation was constitutional because it is "flexible and case-oriented in determining the length of incarceration").

Pinney claims that the statute is "unconstitutionally vague as applied where as in the present [circumstance, Piney has not exhibited] violence in apx. (sic) 2 years [and yet this] is insufficient [for Pinney] to gain freedom from prison extension with indefinite extensions possible for at most a few documented arguments with staff over food access, which never involved any sort of violence by Pinney, circumventing the 4th and 5th Amendment Freedom of Person from unreasonable seizure." [Dkt. 1 at 2-3]. This contention has been rejected. Doe v. Gaughan, 808 F.2d 871, 880 (1st Cir. 1986) (holding that an initial six-month and subsequent one-year commitment period under Mass. Gen. L. c. 123, § 8 are "reasonably related to the purpose of [patients'] confinement and therefore does not violate [their] due process rights under Jackson v. Indiana"). As alleged, this claim fails to state a claim upon which relief may be granted.

### 3. Claims against Judges and Public Defender(s)

"Absolute immunity applies to a narrow swath of public officials, including 'judges performing judicial acts within their jurisdiction,' 'prosecutors performing acts intimately associated with the judicial phase of the criminal process,' and agency officials with functions similar to judges and/or prosecutors." Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013) (citations omitted). "The protection afforded by an absolute immunity endures even if the official 'acted maliciously and corruptly' in exercising his judicial or prosecutorial functions." Id. (citing Wang v. N.H. Bd. of Regist. in Med., 55 F.3d 698, 702 (1st Cir. 1995)). "It likewise

endures in the presence of grave procedural errors." Id. (internal quotation marks omitted; citing Nyestedt v. Nigro, 700 F.3d 25, 32 (1st Cir. 2012)).

"[W]hen a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019). Absolute quasi-judicial immunity also bars claims against court personnel performing discretionary functions that are an integral part of the judicial process. Mabardy v. Grafton Cnty., No. 19-CV-223-PB, 2019 WL 6879365, at *9 (D.N.H. Nov. 22, 2019) (citations omitted). Here, Pinney complains of the action of the two state court judges and unnamed judges who presided over his civil commitment proceedings. Therefore, he is challenging essential judicial functions allegedly performed by these judges in his civil commitment proceedings, which falls within scope of judicial immunity.

To the extent Plaintiff seeks to bring a civil rights claim against his public defender, such claim is subject to dismissal. A defense attorney, whether court-appointed or privately retained, represents only his client, not the state. Polk County v. Dodson, 454 U.S. 312 (1981). Thus, a defense attorney does not act under "color of state law," which is a critical element of a Section 1983 action. Since defendant Blake is not a state actor, he may not be sued under Section 1983.

**4. Medical Malpractice Claim**

Without a plausible federal claim, the Court will not exercise supplemental jurisdiction over any state law claims unless it has diversity jurisdiction pursuant to 28 U.S.C. § 1332. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (explaining that Congress has granted district courts original jurisdiction in federal question cases pursuant to 28 U.S.C. § 1331, and in diversity cases pursuant to 28 U.S.C. § 1332, and that "once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction

over additional claims that are part of the same case or controversy"). The Court lacks diversity subject matter jurisdiction over Plaintiff's medical malpractice claim because he has not alleged that the parties are of diverse citizenship nor facts from which the Court may reasonably infer that the amount in controversy exceeds $75,000.

## V.    Conclusion

Accordingly, Plaintiff's Motion for Leave to Proceed In Forma Pauperis [Dkt. 10] is **ALLOWED**; Plaintiff's Motion for Appointment of Counsel [Dkt. 5] and Motion Requesting Funds for Subpoena [Dkt. 6] are **DENIED**; and this action is **DISMISSED** pursuant to 28 U.S.C. §1915(e)(2), the Court's inherent authority, and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**SO ORDERED.**

Dated: September 26, 2025

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge